IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Anthony Glenn James, | ) | C/A No.: 1:09-1351-HMH-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Jon Ozmint, Warden Padula, Mr. Oberman, and Sharon Patterson, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Lee Correctional Institutional ("Lee"). Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging various claims of violations of his constitutional rights.

Before the court are the following motions: (1) Plaintiff's Motion for Reconsideration of the Denial of a previous Motion to Compel [Entry #44]; (2) Plaintiff's Motion for Extension of Time to Complete Discovery [Entry #46]; (3) Plaintiff's Motion to Subpoena a Witness [Entry #47]; (4) Plaintiff's Motion to Compel [Entry #55]; (5) Defendants' Motion to Dismiss/Summary Judgment [Entry #60]; (6) Plaintiff's Motion for Summary Judgment [Entry #63]; and (7) Plaintiff's Motion for Leave to File an Amended Complaint [Entry #66].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary

judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.   Factual and Procedural Background

Plaintiff filed his complaint in this action on May 26, 2009, and amended his complaint on August 26, 2009 (hereinafter "complaint"). Defendants filed a motion for dismissal/summary judgment on December 22, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. [Entry #61]. Plaintiff filed a response in opposition to Defendant's Motion. [Entry #65]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted, rendering moot the remaining motions.

In his complaint, Plaintiff alleges that Defendants violated his constitutional rights. Specifically, Plaintiff alleges that while at Lee he was found guilty of two offenses at two different disciplinary hearings held by Defendant disciplinary hearing officer Sharon Patterson on August 28, 2007 and September 4, 2007, which he claims were held beyond the time allotted for hearings after an inmate is charged with an offense. (Compl. 3). He next alleges that he was denied due process during a disciplinary hearing on January 8, 2008 because he was not present and had no opportunity to provide evidence on his own behalf. (*Id.*) He further claims he was not afforded due process for a violation that took place in the special management unit ("the SMU") and was heard on October 14, 2008 by

Patterson. (*Id.*) He alleges that because he was incarcerated in the SMU, a non-assaultive violation should have been handled through an informal resolution that would have resulted in a loss of privileges of no more than 90 days. (*Id.*) Instead, he received a 360 day suspension of privileges. (*Id.*) He maintains the same allegations regarding a hearing held on January 6, 2009, except that in addition to a 360 day suspension of privileges, he received an additional 360 days of disciplinary detention. (*Id.*)

He claims that his cell was stripped on January 7, 2008 and his belongings were not returned for two months as retaliation for filing two lawsuits. He states that sleeping on concrete made him delusional and suicidal. (Compl. 4). Finally, he states that his requests to see a doctor for back pains and a dentist for gingivitis have not been answered. (*Id.*) In addition to suing Patterson, Plaintiff names as Defendants Jon Ozmint, Director of the South Carolina Department of Corrections; Warden Padula, Warden of Lee Correctional Institution; and Mr. Oberman, SMU Director. He makes no specific allegations against Defendants Ozmint, Padula, and Oberman.

II.    Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set

forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III. Analysis

    A. Claims against Defendants Ozmint, Padula, and Oberman

Defendants Ozmint, Padula, and Oberman contend that Plaintiff failed to make any actual allegations against them and they cannot be held liable on a theory of *respondeat superior* or vicarious liability. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Ozmint, Padula and Oberman were personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that Defendants Ozmint, Padula and Oberman were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of SCDC employees. Thus, Plaintiff fails to show that Defendants Ozmint, Padula and Oberman are liable on a theory of *respondeat superior* or supervisory liability, and the claims against these Defendants must be dismissed.

B.  Disciplinary Hearings

In his Opposition to Summary Judgment, Plaintiff appears to concede that his claims related to the disciplinary hearings are subject to dismissal. The undersigned agrees that Defendants are entitled to summary judgment on this issue.

In order to recover damages for an allegedly unconstitutional conviction, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 Plaintiff must ordinarily prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994). Although *Heck* involved a conviction in a court of law, the holding in *Heck* is equally applicable to cases which implicate the validity of an internal prison disciplinary conviction and sanction. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to claim challenging a disciplinary proceeding); *see also Stone-Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir. 1997) ("The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success on the Plaintiff's Section 1983 claim necessarily would imply the invalidity of that finding, then *Heck* bars the claim until such time as its requirements are satisfied").

While no evidence has been presented to the court showing that Plaintiff's disciplinary conviction has been overturned, Plaintiff does not allege that he was docked any good time credits as a result of this conviction, nor is there any other indication that

this disciplinary conviction affects the length of Plaintiff's overall sentence. Defendants do not raise *Heck* as a possible defense to this claim. Therefore, for purposes of summary judgment, the undersigned has not considered *Heck* as a bar to Plaintiff's claim arising out of his disciplinary hearing and conviction. *Cf. Roller v. Cavanaugh*, 984 F.2d 120, 122 (4th Cir. 1993); *Strader v. Troy*, 571 F.2d 1263 (4th Cir. 1978) (where an inmate challenges the application to him of certain rules or procedures, but does not argue that he is entitled to immediate release or a speedier release, he may assert such a claim in federal court under 42 U.S.C. § 1983); *Pierce v. Freeman*, No. 95-7031, 1997 WL 467533 (4th Cir. 1997) (holding that a prisoner cannot proceed on a § 1983 claim challenging the validity of a disciplinary proceeding resulting in the deprivation of good-time credits).

Even if not otherwise barred by *Heck*, Plaintiff's claim relating to his disciplinary charges, hearing and conviction are still subject to dismissal. First, the court notes that while Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to control his behavior. *See generally*, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Sandin v. Connor*, 515 U.S. 472, 478 (1995) (the "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"). Plaintiff does not allege any loss of good-time credits. Rather, Plaintiff alleges the hearings were unconstitutional because they were (1) untimely because not held within 21 days; (2) held without his presence; and (3) improper because they were informally resolved, but resulted in disciplinary

detention time and/or a suspension of privileges. These allegations, which Plaintiff does not support with any evidence, do not present a genuine issue of fact as to whether Plaintiff was denied any constitutional right.

Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. *See Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994) (the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed); *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution, ..., [or] to receive a particular security classification...."); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."); *Ordaz v. Lynaugh*, No. 93-4290, 1994 WL 144882, *2 (5th Cir. 1994) ("*Wolff* ... does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."); *Bazzetta v. McGinnis*, 430 F.3d 795, 802-05 (6th Cir. 2005) (regulation banning virtually all visitation for inmates found guilty of two or more violations of major misconduct was not a dramatic departure of a typical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest, and thus did not rise to level of egregious conduct necessary to violate the guarantees of Fourteenth

Amendment's procedural due process clause); *Tarney v. Boles*, 400 F.Supp.2d 1027, 1040 (E.D. Mich. 2005) (inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process); *Papadakis v. Director*, No. 08-670, 2010 WL 1753358 at *2 (E.D. Tex. Apr. 8, 2010) ("[B]eing placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. 472).

Therefore, in order to state a § 1983 claim for the action alleged, Plaintiff would have to present evidence sufficient to show that the Defendants' decision in his case was arbitrary, capricious, or based on some other unlawful motive. *See generally*, *Sandin*, 515 U.S. at 486; *Crowe v. Leeke*, 273 S.C. 763, 259 S.E.2d 614, 615 (1979). Plaintiff has presented no such evidence. Thus, Defendants are entitled to summary judgment.

C. Medical Indifference

In his complaint, Plaintiff alleges he has had inadequate treatment for gingivitis, mental illness, and back pain. (Compl. 4). Plaintiff argues this alleged inadequate treatment is a violation of his constitutional rights and constitutes cruel and unusual punishment.

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and

wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)).

The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain,"proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence

or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 105–106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir.1987); *see also Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Brooks v. Celeste*, F. 3d 125 (6th Cir. 1994) ("Although several courts prior to the Supreme Court's decision in *Farmer v. Brennan*, *supra*, held that 'repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows

negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-109 (3rd Cir. 1990); *Smart v. Villar*, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

Most pertinent to the case at hand, any claims of medical indifference as to Defendants should be dismissed as they are not medical personnel and Plaintiff has not shown that they interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper

course of treatment. *Id.* Under these principles, Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against Defendants, who are non-medical personnel. Plaintiff does not make allegations related to any specific officer regarding his medical claims.

Defendants submitted Plaintiff's medical records which show that Plaintiff was being treated for his medical problems. In reviewing Plaintiff's medical record, it is noted that he was a no show for two scheduled dental exams in January of 2006. He was seen April 16, 2007 by the dental office with extractions scheduled for his next visit. On April 30, 2007, extraction was attempted, but was abandoned because adequate anesthesia could not be achieved. The extraction was rescheduled and Plaintiff was put on antibiotics. On May 15, 2007, Plaintiff was scheduled for a second attempt at extraction, which appointment he cancelled. He was given pain medication and a dental rinse [Entry #60-2, Aff. of Warden Padula].

The medical record indicates Plaintiff received numerous mental health evaluations. [Entry #60-9, Medical Records of Pl.] On December 10, 2007, the clinician noted Plaintiff exhibited manipulative behavior. (*Id.*) On January 13, 2008, Plaintiff was seen on an emergency basis because he tried to commit suicide by hanging himself. (*Id.*) According to Defendants' policy, when an inmate is placed on suicide watch, his cell may be stripped of all materials deemed dangerous to him and not returned to him until medical clearance is given. Medical records indicate that a follow-up mental health exam on January 14, 2008, for the attempted hanging, stated that Plaintiff's claims of audio

hallucinations were questionable. (*Id.*) At a follow-up the next day on January 15, 2008, the clinician stated her impression as Plaintiff being manipulative and recommended he remain confined. (*Id.*)

The medical record indicates that on January 16, 2008, Plaintiff told the mental health practitioner that he was going on a hunger strike because he filed grievances on charges which led him to be placed in SMU. (*Id.*) He claimed the charges should have been overturned, but were not. A further mental health follow-up on February 14, 2008, indicated that Plaintiff was upset because he did not have a mattress. (*Id.*) The clinician noted that he had stuffed his mattress down the toilet some weeks ago and according to the officer could not receive another one unless he paid for it. (*Id.*) Follow-up mental health evaluations continued.

Medical records further indicate that Plaintiff was also seen and treated for chronic low back pain on December 20, 2008 and on January 9, 2009. (*Id.*) On March 19, 2009, he was treated for complaints of gingivitis. (*Id.*)

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of Plaintiff. For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

C. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the

defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #60] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, all other pending motions will be moot.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 13, 2010 Shiva V. Hodges
Florence, South Carolina United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**